UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KERRY P.,                                           :
          Plaintiff,                             :
                                  :
          v.                                  :      C.A. No. 25-471-PAS
                                  :
FRANK BISIGNANO,                                    :
Commissioner of the Social Security                 :
Administration,                                     :
               Defendant.                       :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In May and July 2022, Plaintiff Kerry P., an individual of "advanced age," filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act.  After working for many years as a cashier, shipping manager and order filler, Plaintiff alleged disability beginning on April 9, 2022, when she fell at work.  Her fall resulted in the immediate diagnosis and prompt (on April 18, 2022) surgical removal of a Grade 2 atypical meningioma, followed by radiation treatments, which were delayed and protracted due to wound-healing difficulties that resulted in wound revision surgery on December 7, 2022.  Tr. 316-17, 1213-15.  Plaintiff alleges that this ongoing condition and residual symptoms (including headache and sleep issues) prevent her from working.  Plaintiff's date-last-insured is December 31, 2026.

An administrative law judge ("ALJ") weighed the evidence of record, including administrative findings of two non-examining expert physicians – Dr. Charles Kahn and Dr. Mark Mahoney – and the medical source statement of Plaintiff's treating radiation oncologist,

Dr. Sherry Yan. Based on this review, the ALJ found that Plaintiff retained the RFC[1] to work at all exertional levels, although he found climbing and environmental limits. In reliance on these findings, the ALJ concluded that Plaintiff has not been disabled at any relevant time.

Plaintiff has filed a motion challenging the ALJ's decision for two reasons. ECF No. 11. First, Plaintiff argues that the ALJ erred in how he weighed the prior administrative findings of the nonexamining expert physicians and Dr. Yan's treating source opinion. Second, citing Kayla G. v. Kijakazi, C.A. No. 21-443PAS, 2022 WL 3368600 (D.R.I. Aug. 16, 2022), Plaintiff challenges the ALJ's reliance on his lay analysis of the complex adverse medical developments reflected in the post-file review records. Id. at *6 (remand ordered because "ALJ improperly deployed his lay judgment as the interpretative tool to analyze the medically complex and conflict-ridden post-file review records"). Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 14. Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

## I.    Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see § 1383(c)(3); Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations[,]" taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

scintilla and must do more than merely create a suspicion of the existence of a fact.  Irlanda Ortiz

v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  Further,

while "more than a scintilla of evidence is required to meet the benchmark, a preponderance of

evidence is not."  Clark v. Kijakazi, 673 F. Supp. 3d 119, 122 (D.N.H. 2023) (cleaned up).  The

determination of substantiality is based on an evaluation of the record as a whole.  Frustaglia v.

Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel,

71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker

v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence

detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the

Commissioner must be affirmed, even if the Court would have reached a contrary result as finder

of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per

curiam).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F.

Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its

own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES,

2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).  If

the Court finds either that the Commissioner's decision is not supported by substantial evidence,

or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court

may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. §

405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).[2] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); see Ulitsch v. U.S. Soc. Sec. Admin., Case No. 24-cv-00074-PB, 2025 WL 691054, at *4 (D.N.H. Mar. 4, 2025) ("claimant bears the burden at the first four steps to prove by a preponderance of the evidence that they are disabled").

### B. Opinion Evidence

---

[2] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite only to one set.

4

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim.  20 C.F.R. § 404.1520c(c)(1)-(2).  A medical opinion lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive.  See Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022).  In considering whether, and to what extent, to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so.  Samantha B. v. Bisignano, C.A. No. 25-004MSM, 2025 WL 2992378, at *6 (D.R.I. Oct. 24, 2025), adopted, 2025 WL 3283309 (D.R.I. Nov. 25, 2025).

### C.    Reliance on Experts

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert. Santiago v. Sec. of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would

be apparent even to a lay person.").  "When an ALJ's findings rest on improper lay judgments

regarding matters that are well beyond the ken of common sense, they are not supported by

substantial evidence and should not be sustained."  Carlos N. v. Kijakazi, C.A. No. 20-398-

MSM-PAS, 2021 WL 5231949, at *8 (D.R.I. Nov. 10, 2021) (internal quotation marks omitted),

adopted, 2022 WL 103322 (D.R.I. Jan. 11, 2022).  Relatedly, it is error for an ALJ to deny

benefits in reliance on a consulting or a non-examining expert physician who, despite expertise,

was not privy to parts of the medical record that evidence worsening or that support the claimed

limitations.  Padilla v. Barnhart, 186 F. App'x 19, 22-23 (1st Cir. 2006) (per curiam); Virgen C.

v. Berryhill, C.A No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018).  In such

circumstances, without procuring testimony from a medical expert who has interpreted the entire

medical file, the ALJ is substituting his lay judgment for a necessary expert medical opinion; the

resulting decision is subject to remand because it is not supported by substantial evidence.

Carlos N., 2021 WL 5231949, at *11.  If the claimant sustains her burden of demonstrating that

the post-file-review evidence reveals potentially disabling severe symptoms or symptom

worsening that the ALJ ignored, remand is necessary.  See Jennifer F. v. Saul, C.A. No. 19-

547MSM, 2020 WL 6488706, at *6 (D.R.I. Sept. 16, 2020), adopted, 2020 WL 6487813 (D.R.I.

Nov. 4, 2020).

**III.**    **Analysis**

  **A.**    **ALJ Approach to Yan Medical Opinion and Expert Findings**

Plaintiff has challenged the ALJ's weighing of the findings/opinions of the physician

experts and Dr. Yan.  As to the portion of the medical record to which these findings/opinions

apply (through the end of 2022),[3] the Court finds no error.

---

[3] The portion of the record not seen by either of the nonexamining experts includes Exhibits 15F, 16F and 18F (Tr. 1076-1144, 1159-1220).  The second file reviewer signed his findings on March 16, 2023, based on his review of

Dr. Yan is the radiation oncologist who saw Plaintiff frequently from April 28, 2022 (shortly after the surgery to remove the meningioma) until the end of 2022. Tr. 727-29. Dr. Yan oversaw radiation treatment, monitored wound recovery and performed related physical examinations. Dr. Yan signed a medical opinion on August 4, 2022, in which she opined that Plaintiff has no symptoms from the meningioma, that her other symptoms are not expected to last twelve months and that pain and other symptoms would never interfere with attention to work or cause absence from work. Tr. 727-29. As to the other symptoms, despite expressly noting that there are no supportive clinical observations in her treating record, Tr. 727, Dr. Yan noted limitations in the ability to lift, stand/walk and climb/twist/stoop/crouch. Tr. 728. And despite no adverse mental health observations, Dr. Yan noted that Plaintiff can tolerate "moderate" work stress because she has "no neurocognitive dysfunction" and "adequately treated back pain." Tr. 729. Dr. Mahoney reviewed Dr. Yan's opinion at the reconsideration phase and specifically noted that Dr. Yan's opinion limited Plaintiff's symptoms as "not expected to last 12 months." Tr. 71.

Plaintiff argues that the ALJ's approach to the Yan opinion – to accept some but not all of Dr. Yan's limits – is error because he did not properly perform the supportability/consistency analysis. This is not accurate. The ALJ specifically (and accurately) relied on the lack of clinical or psychiatric findings to support Dr. Yan's lifting/standing/walking/stress limits. Tr. 24-25. The ALJ also analyzed the consistency of the limitations in Dr. Yan's opinion with the balance of the treating record and rejected the lifting/standing/walking/stress limits as inconsistent with Plaintiff's overwhelmingly normal physical and mental examinations, but

---

medical records covering the period through approximately the end of December 2022. See Tr. 71. Dr. Yan's opinion relates to the period from April 2022 until August 4, 2022. Tr. 727-29.

accepted the climbing limits because of their consistency with other examination results.  Id.
Thus, there is no error in the ALJ's determination that Dr. Yan's opinion is partially persuasive.
Nor is there any error in the ALJ's determination to accept some aspects of the Yan opinion.  See
Samantha B., 2025 WL 2992378, at *6 (ALJ may pick and choose among portions of medical
opinions).  Further, as the Commissioner notes, because Dr. Yan's opinion imposes a less-than-
twelve-month limit on such symptoms, which limit was specifically considered by the non-
examining expert, Dr. Mahoney, on which the ALJ relied for his findings of medically
determinable physical impairments, any potential error (which I do not find) would be harmless.
See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969) (remand is "an idle and useless
formality" when "[t]here is not the slightest uncertainty as to the outcome"); Ward v. Comm'r of
Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no
more than an empty exercise").

As to the nonexamining physician experts, Dr. Kahn and Dr. Mahoney, Plaintiff's
argument for the period covered by their review is limited.  She contends only that their prior
administrative findings are not a medical opinion because both found that Plaintiff has no severe
impairments.  This is wrong as a matter of law.  As the applicable regulations make plain, such
findings are to be considered by an ALJ, in the same way that medical opinions are considered,
including that the ALJ must evaluate their persuasiveness.  20 C.F.R. §§ 404.1513(a)(5)(i),
404.1520c(b).  Which is exactly what the ALJ did.  There is no error.

B.    ALJ's Consideration of Post-File Review Medical Records

During most of the period[4] covered by the record reviewed by Dr. Kahn and Dr.
Mahoney and the treatment covered by the opinion of Dr. Yan, Plaintiff's providers noted largely

_____

[4] This excludes the period immediately following each of Plaintiff's two surgeries, when she was temporarily more
impaired.

8

normal physical examinations, with "intermittent [headache,] . . . tolerable without medication." Tr. 931; e.g., Tr. 736-37 ("The patient reports doing well.  She reports mild chronic frontal headache not needing pain medication, no [nausea/vomiting], fatigue, changes in vision, focal weakness/numbness. . . . Full strength throughout.  Normal **gait**.") (emphasis in original).  In their analysis of the record supportive of their finding of no severe impairment, both Dr. Kahn and Dr. Mahoney specifically noted that the headaches were merely "intermittent."  Tr. 64, 71.

However, beginning in approximately May 2023, in records not seen by the non-examining experts or by Dr. Yan, this appears to have changed.  Thus, a May 2023 MRI was noted as calling for "short-term follow-up":

1. Postsurgical changes of right frontal meningioma resection with interval development of peripheral enhancing lesion along the posterior margin of the resection cavity. Differential includes radiation change as well as recurrent meningioma.  **Short-term follow-up perfusion would be helpful**.

2. New focus of left inferior frontal paramedian cortical enhancement in the vicinity of a focus of gyriform diffusion restriction.  Query subacute ischemic change.  **Attention on follow short-term follow-up is recommended**.

Tr. 1106 (emphasis added).  Also in May 2023, another provider noted that Plaintiff "has long standing headaches, will restart amitriptyline for better control," as well as that Plaintiff's case was complex enough for presentation to committee for review.  Tr. 1110.  Over the months that followed, Amitriptyline for the headaches was gradually increased and the monitoring of Plaintiff's brain scans became more frequent.  By November 2023, Plaintiff was prescribed 50 milligrams based on her report of "long standing headaches, which have worsened."  Tr. 1213. At the same appointment in November 2023, this provider noted,

Has been clinically stable however MRI today shows interval enhancement around resection cavity, final report pending.  Will plan to repeat in 6 weeks with evaluation at that time.  We discussed this could be in an area that can be resected,

however she would have to consider cessation of smoking given prior history of wound dehiscence and risk for infection.

Tr. 1213. This evidence of worsening is also reflected in Plaintiff's testimony, including that one attempt to work in 2023 failed and that Plaintiff's part-time job since June 2023 has been difficult. Tr. 42, 50-52. Yet the post-file review portion of the record also reflects such findings as "doing well without headache" noted in August 2023 and a Karnofsky Performance Status[5] of 90% noted in November 2023. Tr. 1134, 1214.

Instead of calling for a medical expert to interpret these complex clinical findings, the ALJ deployed his lay expertise to focus on the symptoms that were absent (such as no abdominal pain, no cough, etc.) and the findings on examination that were normal (such as normal gait, no extremity edema, etc.); but his decision ignores the worsening headaches (being treated with increasing medication doses) and the new and apparently concerning MRI results; and he discounted Plaintiff's consistent (with the treating record) testimony about worsening symptoms. Based on his lay review of these post-file review records, the ALJ made the determination that Plaintiff' RFC was more restrictive than the nonexamining experts had found; however, his added limitations were postural (limits on climbing) and avoidance of workplace hazards. With the addition of these limits, the resulting RFC resulted in the finding that Plaintiff is not disabled. Tr. 25.

The law is settled that an ALJ cannot rely on his lay judgment as the interpretative tool for complex medical records that reflect a worsening of the claimant's symptoms to determine the claimant's RFC. By deciding not to call a medical expert to interpret the medically complex

---

[5] The Karnofsky Performance Score is an assessment tool used in healthcare, primarily with cancer patients. See Coty v. Colvin, 15-CV-44S, 2016 WL 1211284, at *5 n.3 (W.D.N.Y. Mar. 29, 2016). A score of 90% means the ability to "carry on normal activity; minor signs or symptoms of disease." See Justin C. v. Comm'r of Soc. Sec., 1:24-CV-00897 EAW, 2026 WL 369091, at *4 n.2 (W.D.N.Y. Feb. 10, 2026) (internal quotation marks omitted).

MRI results, the worsening headaches requiring increasing medication, the sleep issues, the need for close medical monitoring (that would result in absence from work to attend appointments), and the possibility of more surgery, all of which collectively is potentially supportive of a more restrictive RFC that might result in a finding of disability, the ALJ went beyond his ken. In such circumstances, when the post-file review records are medically complex and not susceptible of a lay analysis, the Court must remand the case for further proceedings to procure the assistance of a medical expert qualified to interpret them. Kayla G., 2022 WL 3368600, at *3; see Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam) ("Absent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion.").

Before closing, the Court turns to a final issue – although remand for further proceedings is required because the ALJ's RFC analysis was flawed, the Court does not find that this is an unusual case where the proof is overwhelming, or that the evidence of disability is very strong and there is no contrary evidence. See Samantha B., 2025 WL 2992378, at *8. Rather, this is a medically complex case with a mixed record of post-file-review normal and abnormal findings. Therefore, the Court declines to remand for an award of benefits.

## IV.   Conclusion

Having reviewed the entirety of this record, the Court finds that remand is required for further proceedings to review Plaintiff's post-file review medical records with the assistance of a qualified medical expert. Accordingly, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) is GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) is DENIED. The Clerk is directed to enter judgment in favor of Plaintiff.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 29, 2026